**BEFORE THE UNITED STATES**
**JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

**IN RE: GOOGLE GAMBLING**    )
**APP LITIGATION**            )     **MDL Docket No. _____**


**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR TRANSFER OF**
**ACTIONS PURSUANT TO 28 U.S.C. § 1407**

Plaintiffs Maria Valencia-Torres, Edgar Smith, Michael Brown, and Erica Montoya have brought similar claims against Google, LLC and Google Payment Corporation (collectively "Google"). Each plaintiff claims Google violated state laws in Alabama, Mississippi, New York, and New Mexico, respectively, forbidding the facilitation of gambling. The cases are pending in the Northern District of Alabama, the Southern District of Mississippi, the Northern District of New York, and the District of New Mexico. These federal districts have jurisdiction over the cases under the Class Action Fairness Act, because the members of the classes are citizens of different states than all defendants and their claims form part of a class with an amount in controversy exceeding five million dollars. All of the complaints arise from similar factual predicates, and the coordination of these proceedings in the Northern District of California will promote efficiency for the parties and the judiciary.

## LEGAL AND FACTUAL FRAMEWORK

Outside of clearly defined contexts that do not include cell phone apps, the state laws of Alabama, Mississippi, New York, and New Mexico clearly prohibit games that allow players to win anything of value. See All Complaints at ¶ 13. Each of these states has further determined that the opportunity for extra playing time constitutes something of value for the purposes of the state's gambling laws. Id. For example, in New York:

> "Something of value" means any money or property, any token, object or article exchangeable for money or property, or any form of credit or promise directly or indirectly contemplating transfer of money or property, or of any interest therein, or involving extension of a service, entertainment or a privilege of playing at a game or scheme without charge.

New York Penal Code § 225.00. Alabama's definition is functionally identical, defining a "thing of value" as:

> Any money or property, any token, object or article exchangeable for money or property or any form of credit or promise directly or indirectly contemplating transfer of money or property or of any interest therein, or involving *extension of a service entertainment or a privilege of playing at a game or scheme without charge*.

Ala. Code § 13A-12-20(11). The laws of New Mexico and Mississippi offer similar definitions. Each of these four states also allows those who lose money at illegal gambling to recover their losses. See All Complaints at ¶ 21.

The Plaintiffs in the four underlying actions seek to apply these similar state laws to virtually identical factual predicates. In each case, the Plaintiff downloaded one or more apps from the Google Play Store. The apps initially gave Plaintiffs a certain number of "credits" or "tokens" to use in playing slot machines or casino-like games, but when those were lost Plaintiffs spent money to purchase additional credits. As Plaintiffs played the games, winning allowed them to continue playing without charge, while losing forced them to buy more credits if they wished to continue playing. All of the Plaintiffs allege that this setup violated the statutes described above.

Because of the substantial factual overlap in these cases, centralizing the actions for pre-trial activity pursuant to Section 1407 makes sense for several reasons. First, Plaintiffs will likely seek very similar discovery from both Google and third-party app developers. It would be inefficient to require duplicative production, and perhaps duplicative motion practice surrounding discovery, in each of the four cases. In addition, before discovery even begins, there is likely to be motion practice in each of these cases that will require the four courts to evaluate virtually identical issues of fact and similar laws in each state. Because each of the cases is brought as a class action, common legal issues surrounding class certification and Rule 23 of the Federal Rules of Civil Procedure must also be addressed. This multitude of commonalities means that centralized preliminary proceedings in an MDL would be much more efficient than individual actions spread across the country. The logical place to host such an MDL is the Northern District of California, where Google is headquartered, and which is the center of gravity of the litigation.

**ARGUMENT**

### I.      These Cases Should be Transferred to a Single District Pursuant to 28 U.S.C. § 1407

Section 1407's MDL procedure was created in the 1960's to relieve the pressure on the national court system when multiple similar cases are filed. See 28 U.S.C. § 1407. The statute allows for pre-trial centralization when multiple actions

exist "involving one or more common questions of fact." 28 U.S.C. § 1407(a). The judicial panel on multidistrict litigation should transfer actions when it determines that such transfer "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." Id. Potential MDL's should be centralized when the action would "eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel, and the judiciary." In re Nine W. LBO Sec. Litig., 464 F. Supp. 3d 1383, 1385 (J.P.M.L. 2020). The cases at issue satisfy these requirements and should be transferred for centralized preliminary proceedings.

### A. Multiple common questions of fact exist.

The four actions against Google arise from very similar factual predicates. Each of the Plaintiffs purchased similar gambling apps, used them until they had lost the free allotment of credits, purchased additional credits, and lost those. These common questions are more than sufficient to meet the standard in Section 1407. "In any event, Section 1407 does not require a complete identity or even a majority of common factual issues as a prerequisite to centralization." In re: Keurig Green Mountain Single-Serve Coffee Antitrust Litig., 24 F. Supp. 3d 1361, 1363 (J.P.M.L. 2014) (citing In re: Park West Galleries, Inc., Litig., 887 F. Supp. 2d 1385 (J.P.M.L. 2012). In this case, however, the common questions exist in spades, since all four complaints "assert comparable allegations against identical defendants based upon

similar transactions and events." <u>In re Air West, Inc. Securities Litig.</u>, 384 F. Supp. 609, 611 (J.P.M.L. 1974) (noting that in such circumstances, "common factual questions are presumed.")

The four cases at issue are all against identical defendants, Google LLC and Google Payment Corp. They all make identical allegations about Google's play store and the gambling apps available therein. Each plaintiff alleges they have lost money to these apps, which allegedly violate similar state laws. Thus, they "assert comparable allegations" against the Google defendants. <u>Id</u>. Each Plaintiff also alleges that he or she made similar purchases of coins or credits and lost them playing casino gambling games. Thus, the allegations are "based upon similar transactions and events." <u>Id</u>.

The common question prong of Section 1407 is clearly met. If the cases are not centralized for preliminary proceedings, four individual courts (and perhaps more if cases are brought in additional states) will face likely face motions to dismiss, motions for summary judgment, and motions for class certification that raise almost identical factual issues and apply similar legal frameworks. There are also potentially identical legal issues surrounding Google's potential defenses, at least one of which is based in federal law, under Section 230 of the Communications Decency Act. See 47 U.S.C. § 230; <u>In re: Nebivolol (%2C040) Patent Litig.</u>, 867 F. Supp. 2d 1354, 1355 (J.P.M.L. 2012) (noting common defenses were anticipated in

each action). The bottom line is that the actions are clearly alike enough to consolidate for the J.P.M.L. to choose to centralize them for preliminary proceedings under Section 1407. <u>See, e.g.</u>, <u>In re: Ascot Oils, Inc. Securities Litig.</u>, 433 F. Supp. 1118, 1120 (J.P.M.L. 1977) (centralizing actions that "raise numerous virtually identical questions of fact").

## B. Centralization Will Promote Convenience and Efficiency

Section 1407 allows transfer where consolidation "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). In evaluating this prong, the J.P.M.L. typically examines whether duplicative discovery and witness testimony will likely be needed in the underlying actions, as well as the current stage of the actions and whether nay of them have progressed far enough that it would be inefficient to centralize them now. <u>See, e.g.</u>, <u>Nine W.</u>, 464 F. Supp. 3d at 1385; <u>In re: Wells Fargo Mortg. Modification Litig.</u>, 437 F. Supp. 3d 1379, 1379-80 (J.P.M.L. 2020). In these cases, both factors weigh in favor of centralization, because duplicative discovery is likely and all of the actions remain at the pleading stage.

Duplicative discovery is both likely in this case and likely to involve third parties. All of the complaints allege a particular relationship between Google and the gambling apps at issue, including the facilitation and promotion of illegal gambling by taking payments from Plaintiffs and the putative class. The Plaintiffs

also allege that Google benefits from this illegal gambling activity by retaining a portion of the payments. Discovery surrounding these issues will be common with respect to Google, requiring the Defendant to produce the same documents and likely the same or substantially identical corporate witnesses. It may also involve the same third parties, as many of the most popular apps were created by the same small group of developers. In cases with such "a common factual core," transfer into an MDL is appropriate to eliminate duplicative discovery. In re: Auto Body Shop Antitrust Litig., 37 F. Supp. 3d, 1388, 1390 (J.P.M.L. 2014). If complex issues arise in discovery, a centralized MDL will allow an experienced judge to create a single discovery plan that applies to all the actions. In re: U.S. Foodservice, Inc., Pricing Litig., 528 F. Supp. 2d 1370, 1371 (J.P.M.L. 2007). This will allow for streamlined litigation and conserve the resources of the parties, any third parties from whom discovery is sought, and the judiciary.

In addition, each of the underlying actions at issue is a putative class action. The J.P.M.L. has "consistently held that the existence of and the need to eliminate this possibility [of inconsistent rulings on class certification] presents a highly persuasive reason favoring transfer under Section 1407." In re Roadway Exp., Inc. Employment Practices Litig., 385 F. Supp. 612, 613 (J.P.M.L 1974) (citing In re Equity Funding Corporation of America Securities Litigation, 375 F. Supp. 1378, 1385 (J.P.M.L. 1974). Class certification presents another set of issues that include

common questions of law, including questions about Google's policies that weigh on issues of typicality, commonality, and the superiority of the class action form. These issues further counsel in favor of centralization, and the J.P.M.L. should transfer these cases for pretrial proceedings.

In determining whether centralization will promote the convenience and efficiency of the parties and the judiciary, the J.P.M.L. also considers the stage of the underlying actions when determining whether centralization is appropriate. See, e.g., In re: Wells Fargo Mortg. Modification Litig., 437 F. Supp. 3d 1379, 1379-80 (J.P.M.L. 2020) (denying transfer because the most advanced action was "far more advanced than any other, with discovery largely complete, a nationwide class certified, a motion for partial summary judgment pending, and until recently, a trial on the horizon.") The opposite is true in this case—none of the actions are more advanced than any other, as Google, with which Plaintiffs agreed to an extension, has yet to answer any of the complaints. The cases are ripe for centralization.

### C. Other means of potential coordination between these actions would be insufficient.

In some cases, the J.P.M.L. has declined to transfer a case for centralized proceedings because it determined that other methods of coordination between the actions are more appropriate. See, e.g., In re: Gerber Probiotic Products Marketing and Sales Practices Litig., 899 F. Supp. 2d 1378, 1379 (J.P.M.L. 2012) (noting that centralization may be denied "where there is a 'reasonable prospect' that the

resolution of Section 1404 motions could eliminate the multidistrict character of the actions") (quoting In re: Republic Western Ins. Co. Ins. Coverage Litig., 206 F. Supp. 2d 1364, 1365 (J.P.M.L 2002). In the In re Gerber litigation, for example, the Panel noted that one court had already transferred the case to a different district under Section 1404 (28 U.S.C. § 1404), and that motions requesting the same relief were pending in multiple other actions. 899 F. Supp. 2d at 1379. Here, no such motions have been filed, and Google has not indicated to Plaintiff that it will seek transfer under Section 1404. Where there is not a "reasonable prospect" that section 1404 motions will "moot the multidistrict character of this litigation," there is no reason to defer to Section 1404 and deny centralization. See In re: Schnuck Markets, Inc., Customer Data Sec. Breach Litig., 978 F. Supp. 2d 1379, 1380-81 (J.P.M,L. 2013) (distinguishing In re Gerber and centralizing cases where Section 1404 motions had been filed in some actions, but none had been ruled upon.).

As noted, unlike in the In re Schnucks litigation, Section 1404 motions have not even been filed here. As in that litigation, such motions are unlikely to succeed in bringing the actions together in a single district. Each of the four actions is a putative statewide class action, with the class definition limited to residents of the forum state. See Complaints at ¶ 24. In contrast, In re Gerber featured actions with "overlapping, if not identical, putative classes," such that, with or without transfer, class certification decisions in one action would necessarily affect the others. 899 F.

Supp. 2d at 1379. In that case, transfer under Section 1404 for permanent consolidation, rather than pre-trial centralization under Section 1407, made the most sense. Here, as explained above, there are numerous common issues that make centralization appropriate, but the classes do not overlap[1], and return to the states in which the actions were filed for ultimate resolution will be required if the litigation persists to that stage. This is especially true in this case because, while they share a factual predicate, the underlying actions are brought under state laws that differ in subtle ways and should be heard individually under the full laws of those states as required by Section 1407, rather than consolidated into a single action with unwieldy multiple independent classes applying different laws as consolidation after Section 1404 transfer would entail.

Simple coordination by the parties would also be unlikely to provide anything like the benefits available from pretrial centralization under Section 1407. While the parties and their counsel will no doubt endeavor to work together as smoothly as possible, this case is likely to involve significant motion practice and contentious discovery. There is no need to burden four (and possibly more) different district judges with managing this dispute, nor to make the parties and potential third parties produce duplicative documents or take repetitive depositions. Nor is there any reason

---

[1] It is theoretically possible that a putative class member could have been a resident of more than one of the states at issue during the statutory period, but the numbers of such individuals would be vanishingly tiny.

to risk disparate rulings from the courts on substantially similar discovery issues. These potential problems likely cannot be eliminated by simple cooperation, but they can be fully avoided through pretrial centralization under Section 1407.

## II. The Northern District of California Provides an Appropriate Venue for Pretrial Proceedings

The Panel considers several factors when determining the most reasonable venue for centralization of these actions for pretrial proceedings. These factors include the preference of the parties, the location of evidence and witnesses, the docket conditions in the transferee district, and the experience of the proposed transferee judge, as well as his or her familiarity with any of the issues in the case. There is no requirement that the transferee district be any of the districts in which the underlying cases were filed. See, e.g., In re Nine West LBO Sec. Litig., 464 F. Supp. 3d 1383 (J.P.M.L. 2020) (transferring to district described as "litigation's center of gravity," though no actions were pending there); In re Facebook, Inc., Consumer Privacy User Profile Litig., 325 F. Supp. 3d 1362 (J.P.M.L. 2018) (transferring to district "where Facebook is headquartered and relevant evidence and witnesses are likely to be located"); In re Biomet M2a Magnum Hip Implant Products Liability Litig., 896 F. Supp. 2d 1339 (J.P.M.L. 2012) (transferring to district with favorable docket conditions and experienced judge).

In this case, evaluation of all of these factors point to the Northern District of California as the appropriate transferee district and Judge Edward J. Davila as an

experienced judge to guide the litigation. Though none of the currently pending cases are in the district, the Northern District of California has a strong "nexus" to the litigation because defendant Google is headquartered there. In re Delphi Corp. Sec., Derivative & ERISA Litig., 403 F. Supp. 2d 1358, 1360 (J.P.M.L. 2005) (observing that "this district has a significant nexus to the litigation" because "Delphi's principal place of business is located there.") As in the Facebook and Delphi MDL's, the parties are likely to find that much of the evidence concerning Google's policies on gambling apps, its relationships with the apps at issue, and even the Plaintiffs' own purchases and usage of the apps will be located in the district where Defendants' headquarters exist. See, e.g., In re Nine W., 464 F. Supp. 3d at 1385 (describing the district where the defendants were headquartered as the "center of gravity" of the litigation).

It is also significant that the Plaintiffs in all of the underlying actions would prefer the Northern District of California. While parties often express an interest in centralization in "what amounts to their home forum," Plaintiffs here recognize the efficiency of litigating in the district that is home to Google's headquarters. See, e.g., In re Asbestos Products Liability Litig. (No. VI), 771 F. Supp. 415, 416 (J.P.M.L. 1991). Furthermore, Plaintiffs expect that Google will likely agree that the most appropriate transferee district for pretrial centralization is the Northern District of California, meaning that all parties involved in the litigation so agree. In such a

situation, the panel has often come to the same conclusion as the parties. See, e.g., In re Capacitors Antitrust Litigation (No. III), 285 F. Supp. 3d 1353, 1355 (J.P.M.L. 2017) (noting that "all parties agree on centralization" in the Northern District of California).

The Northern District of California is one of the most experienced MDL transferee districts in the country, having played host to more than thirty such cases since 2015. The Panel often considers such experience when determining an appropriate transferee district. See In re Janus Mut. Funds Inv. Litig., 310 F. Supp. 2d 1359, 1361 (J.P.M.L. 2004) (noting "search[] for a transferee district with the capacity and experience to steer this litigation on a prudent course."); In re Baycol Products Liability Litig., 180 F. Supp. 2d 1378, 1380 (noting transferee district "possesses the necessary resources, facilities, and technology" to handle the litigation.) As the panel has often found in the past few years, the Northern District of California has the capacity, experience, resources, facilities, and technology to manage this litigation.

The Northern District of California's vast MDL experience also includes cases dealing with Google and/or apps on the Google Play Store as this litigation does. See, e.g., In re Google Android Consumer Privacy Litig., 802 F. Supp. 2d 1372 (J.P.M.L. 2011); In re Google Inc. Gmail Litig., 936 F. Supp. 2d 1381 (J.P.M.L. 2013); In re Google Inc. Street View Electronic Comm's Litig., 733 F. Supp. 2d

1381 (J.P.M.L. 2010). Home to Silicon Valley, the Northern District of California has also been assigned multiple other MDL's involving tech companies like Google. See, e.g., In re Apple Inc. Device Performance Litig., 291 F. Supp. 3d 1371 (J.P.M.L. 2018); In re Facebook Internet Tracking Litig., 844 F. Supp. 2d 1374 (J.P.M.L. 2012). Clearly the Northern District of California has the experience and ability to handle litigation of this type.

## CONCLUSION

The four actions at issue are based on virtually identical factual predicates, raising numerous common questions of fact. Centralization of the actions would be more efficient for the parties, potential third parties subject to discovery, and the judiciary. Thus, centralization for pretrial proceedings is appropriate under Section 1407. The Northern District of California presents an appropriate location for these proceedings, and Plaintiffs respectfully request the Panel order centralization there.


Respectfully submitted this 29th day of March, 2021,

/s/   Dargan M. Ware
Dargan M. Ware
Attorney for Plaintiffs


**OF COUNSEL:**
John E. Norris
Wesley W. Barnett
Dargan M. Ware
DAVIS & NORRIS LLP
2154 Highland Avenue South

Birmingham, Alabama 35205
Telephone: 205.930.9900
Facsimile: 205.930.9989
jnorris@davisnorris.com
wbarnett@davisnorris.com
dware@davisnorris.com